# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | | |
|---|---|---|
| **JOHNNY JACKSON STONE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **4:21-cv-00136-LSC** |
| | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF OPINION

### I.     Introduction

The plaintiff, Johnny Jackson Stone, ("Stone" or "Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Stone timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). Also before the Court is Plaintiff's motion for remand pursuant to sentences four and six of 42 U.S.C. § 405(g). (Doc. 15.)

Plaintiff was 47 years old at the time of his applications and 49 years old on the date of the Administrative Law Judge's ("ALJ's") decision. (*See* Tr. 102, 337, 341.) Stone has previously worked as a maintenance mechanic, auto mechanic, parts puller, and production line welder. (Tr. 100, 153-54.) Plaintiff claims that he became disabled and ceased working on May 31, 2018, due to depression, high blood pressure, diabetes, and nerve pain. (Tr. 383.)

The Social Security Administration has established a five-step sequential evaluation process to determine whether an individual is disabled and thus is eligible for DIB and SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational

requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *Id.* The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. *Id.*

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the Administrative Law Judge ("ALJ") found that Plaintiff has not engaged in SGA since November 1, 2018, the alleged onset date of his disability. (Tr. 88.) According to the ALJ, Plaintiff's degenerative disc disease, depression, anxiety, borderline intellectual functioning, diabetes mellitus with polyneuropathy, tendinitis, and arthritis of the left shoulder are "severe impairments." (*Id.*) However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 93.) The ALJ determined that Plaintiff has the following RFC:

> [T]o perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c) except he is limited to lifting and carrying 50 pounds occasionally and 25 pounds frequently. He can push/pull as much as he can lift and carry. He is limited to sitting, standing, and walking for 6 hours. The claimant is limited to no reaching overhead to the left and can never reach overhead to the right. He frequently balance[/]climb

ramps and stairs, stoop, kneel, crouch, and crawl. He can never climb ladders, ropes, or scaffolds. He can never work at unprotected heights and never around moving mechanical parts. The claimant is limited to understanding, remembering, and carrying out simple instructions consistent with unskilled work. He is limited to occasional contact with coworkers and supervisors. He is able to work in proximity to others but not on team positions. The claimant is limited to occasional contact with the general public.

(Tr. 96.)

According to the ALJ, Plaintiff is able to perform his past relevant work as a parts puller and production line welder. (Tr. 100-01, 153-56.) The ALJ also determined that Plaintiff is a "younger individual age 18-49" at 47 years old, has a limited education, and is able to communicate in English, as those terms are defined by the regulations. (Tr. at 100.) The ALJ determined that the "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferrable job skills." (Tr. 100-01.) Because Plaintiff has some limitations in the unskilled medium occupational base, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocational Rules as a guideline for finding that there are a significant number of jobs in the national economy that Plaintiff is capable of performing, such as a food preparation worker, kitchen worker/dishwasher, and packers and packagers. (Tr. at 101.) The ALJ concluded her finding by stating that Plaintiff "has not been under a disability, as

defined in the Social Security Act, from November 1, 2018, through the date of this decision." (*Id.*)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181

(11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)).  Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1989)).

## III.    Discussion

Plaintiff argues that the ALJ's decision should be reversed and remanded for two reasons: (1) the ALJ did not give proper weight to the opinions of Dr. June Nichols, Psy.D. because the denial was not based on substantial evidence, and (2) the Appeals Council failed to adequately consider the submissions of new evidence. (Doc. 10 at 26-30.) Plaintiff subsequently filed a motion to remand pursuant to sentences 4 and 6. (Doc. 15.) The Court will consider these arguments in turn.

## A. Whether the ALJ Failed to Accord Proper Weight to Examining Psychologist, Dr. June Nichols

Plaintiff first argues that the ALJ failed to accord proper weigh to the opinion of Dr. June Nichols, suggesting that the ALJ failed to state with "some measure of clarity" the reasons for rejecting Dr. Nichols's opinion and instead substituted her opinion for that of Dr. Nichols. (Doc. 10 at 28-30.) For the reasons set forth below, this argument fails.

To be found disabled, Plaintiff had to demonstrate that he was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment expected to result in death or to last twelve or more continuous months. *See* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 404.1505. At step two, the ALJ had to determine whether Plaintiff had a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Ruling(s) ("SSR"s) 85-28. The burden

of showing that an impairment or combination of impairments is "severe" rested at all times with Stone, as the Plaintiff. *Turner v. Comm'r of Soc. Sec.*, 182 Fed. App'x 946, 948 (11th Cir. 2006) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). Because Plaintiff bore the burden of proving he had a severe impairment, he thus had the burden of establishing the prerequisite for finding a severe impairment, i.e., the existence of a medically determinable impairment. *See Doughty*, 245 F.3d at 1280.

The record must include evidence from acceptable medical sources to establish the existence of a medically determinable impairment. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1513(a), 416.913(a) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability ... ; there must be medical ... findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities ...."); *see also* 20 C.F.R. § 404.1502 (defining symptoms, signs, and laboratory findings).

Here, the ALJ concluded that Plaintiff had several severe impairments: "degenerative disc disease, depression, anxiety, borderline intellectual functioning, diabetes mellitus with polyneuropathy, tendinitis, and arthritis of the left shoulder." (Tr. 88.) However, the ALJ found that none of these impairments or combination of impairments met or medically equaled the severity of one of the listed impairments

in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 93.) Based on the determinations the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the qualifying impairments, the Plaintiff's RFC, and the finding that there were jobs in significant numbers in the national economy that the Plaintiff could perform, the ALJ determined that the Plaintiff has not been under a disability since his alleged onset date of November 1, 2018. (Tr. 93-101.)

New regulations came into effect in 2017, which govern this case. These new regulations provide revised instructions to the ALJ for evaluating medical opinions. For claims filed after March 27, 2017, 20 C.F.R. §§ 404.1520c and 416.920c declare that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." Instead, the ALJ will consider supportability, consistency, relationship with the claimant, length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship specialization, and other factors in evaluating medical opinions and prior administrative medical findings, with the most important factors being supportability and consistency. 20 C.F.R. §§ 404.1520c, 416.920c. While the ALJ must explain the role of the supportability and consistency factors in evaluating

the opinion of a medical source or administrative medical finding, he is not required to do the same for the other factors. *Id.* In responding to comments to these changes when proposed, the Social Security Administration explained,

> The supportability and consistency factors provide a more balanced and objective framework for considering medical opinions than focusing upon the factors of consistency and the medical source's relationship with the individual. A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, will not be persuasive regardless of who made the medical opinion.

*Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01 (Jan. 18, 2017).

In contrast, 20 C.F.R. §§404.1527 and 416.927, the regulations that govern for claims filed before March 27, 2017, prioritize the treatment relationship, giving more weight to a treating source's medical opinion. Indeed, if the ALJ "find[s] that a treating source's medical opinion on the issue(s) of the nature and severity of [Plaintiff's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the ALJ] will give it controlling weight." 20 C.F.R. §§404.1527, 416.927. Stone protectively filed for disability on February 8, 2019, so the new regulations govern this case. (Tr. 86, 347.)

Stone saw Dr. Nichols for a psychological evaluation on May 13, 2020. (Tr. 1144.) Dr. Nichols's examination included conversations with Stone as well as

administration of the Similarities and Information subtests of the Wechsler Adult Intelligence Test, fourth edition (WAIT-IV). (Tr. 1145-49.) Plaintiff scored a 5 and 6, respectively, compared to an average score of 10. (Tr. at 1148.) Dr. Nichols concluded that Plaintiff's mood was depressed and congruent with thought processes. (Tr. at 1147.) According to Dr. Nichols, Plaintiff's thought processes were within normal limits, and she found no evidence of confusion, loose associations, tangentiality, flight of ideas, or thought blocking. (*Id*.) She opined that Plaintiff's stream of consciousness was clear and that he was oriented to person, place, time, and situation but demonstrated problems with mental processing. (*Id.*) Dr. Nichols reported that Stone was able to count from 20 to 1 but was unable to perform serial threes or serial sevens. (*Id*.) He was able to spell "world" backwards and to perform addition and subtraction. (*Id*.) Dr. Nichols found Plaintiff's recent memory function to be grossly intact and his intermediate memory to be fair (*Id.*) Dr. Nichols's diagnostic impression of Plaintiff was that he has a specific learning disorder with impairments in reading, mathematics, and written expression, alcohol use disorders, and methamphetamine use disorder in remission. (Tr. 1149.) She also estimated that Plaintiff had borderline intelligence. (*Id.*) According to Dr. Nichols, Stone would be able to understand, remember, or carry out very short and simple instructions but cannot maintain attention, concentration and/or pace for periods of

at least two hours. (*Id.*) She stated that he would likely have difficulty performing activities within a schedule and being punctual. (*Id.*) She further expressed that Stone cannot sustain an ordinary routine without special supervision. (*Id.*) She is of the opinion that Plaintiff cannot adjust to routine and infrequent work changes, and while she admitted that Plaintiff "might interact ok with supervisors and co-workers," she believes Stone has the potential to blow up quickly without warning. (*Id.*) Dr. Nichols reported he is likely to be off task 25% of an 8-hour workday. (*Id.*) She also found that Stone "can adhere to basic standards of neatness and cleanliness," and even though he has struggled with addiction to drugs and alcohol in the past, she acknowledged that he was not using them at the time of the exam. (*Id.*) She did not expect his intellectual deficits to change significantly, even without the influence of drugs or alcohol. (*Id.*)

Dr. Nichols also completed a mental health source statement on June 4, 2020. (Tr. 1297.) On that form, Dr. Nichols indicated, by circling "yes" or "no" her opinion of Plaintiff's abilities and limitations, which were consistent with the opinions expressed in the summary of her examination findings. (*Id.*) When asked if Plaintiff's limitations existed back to November 1, 2018, Dr. Nichols answered "yes," and she did not list any side effects of Plaintiff's medications. (*Id.*)

The ALJ gave partial weight to Dr. June Nichols's opinion because her opinions that described Plaintiff as having significant limitations "are not consistent with the mostly normal psychological examinations in the record and are not supported by the claimant's reported activities of daily living." (Tr. 99.) The ALJ also concluded that Dr. Nichols's opinions "are not consistent with her own objective findings during her examination," though she did find that Dr. Nichols's opinion that Plaintiff could understand, remember, and carry out simple instructions was consistent with his reported activities of daily living. (*Id.*) She did not find such support for Dr. Nichols's opinion that Plaintiff could not maintain attention, concentration, and/or pace for periods of two hours or adjust to infrequent work changes because he described being able to drive, shop, and handle his finances. (*Id.*) The ALJ also found that Dr. Nichols's opinions that Plaintiff could not perform activities within a schedule, be punctual, or sustain an ordinary routine without supervision to be inconsistent with his activities of daily living and unsupported by "by her own finding that the [Plaintiff] has good judgment and insight." (*Id.*) Furthermore, while the ALJ concluded that Plaintiff has some limitations in interacting with others based on his psychological diagnoses, she found Dr. Nichols's opinion that Plaintiff "can interact with supervisors and coworkers at

time" to be inconsistent with Plaintiff's own reports that he had no issues getting along with other people. (Tr. 99-100.)

Substantial evidence in the record supports the ALJ's conclusion. Plaintiff reported that he can shop, pay bills, count change, handle a savings account, and maintain a checking account. (Tr. 428.) Stone also stated in his Function Report that he can perform yardwork, drive, and is able to follow spoken instructions most of the time (where he stated "like on a job"). (Tr. at 427-28, 430.) Furthermore, Dr. Nichols's mental health source statement is inconsistent with and unsupported by records from the CED Mental Health Center, where Stone was seen on multiple occasions over the course of several years. (Tr. at 759-936.) Treatment notes indicate Stone was regularly oriented to person, place, time, and situation, with a normal affect, euthymic mood, and appropriate or neat appearance. (*See e.g.*, Tr. 785, 786, 794, 802, 803, 805, 806, 807, 808, 809, 810, 811, 812, 876,877, 878, 879, 880.)

The ALJ specifically noted two of Stone's visits to CED Mental Health Center on July 9, 2019, and the other on October 14, 2019. (Tr 90-91.) At the July 2019 intake visit, Plaintiff stated that he was doing okay. (Tr. 988.) He stated that his medications were working a lot better after changing from Trintellix to Prozac and reported that he can control his emotions a lot better. (*Id.*) Stone stated the depression is much better. (*Id.*) Notes from his visit indicate that he had been

financially stressed and in a toxic relationship with his girlfriend of three years that he wanted to end. (*Id.*) At the October 2019 appointment, Plaintiff again stated that he was doing okay and the medication was helping. (Tr. 977.)  Although he reported the medication was helping, he stated he still has quite a bit of depression and anxiety. (*Id.*) Stone said that one of the medications he was taking for sleep causes him to wake up feeling groggy. (*Id.*) Treatment notes indicate that Stone was making good progress with his goal, that he was stable, that he had a desire to separate himself from negative relationships, and that he was dealing with issues independently. (Tr. 975.)

Dr. Nichols's opinions are also inconsistent with examinations from other doctors in the record and Plaintiff's Function Report. At an appointment on January 9, 2020, Plaintiff was seen at Willis Family Valley Medicine where Plaintiff's hypertension was described as controlled and his psychiatric and mental status examinations were normal. (Tr. 1010, 1014.) His mood was described as normal, and he was oriented to time, place and person. (Tr. 1010.) He was cooperative, calm, alert, exhibited an affect that was congruent to thought content. (*Id.*) Plaintiff also showed intact memory and had no hallucinations or suicidal ideations. (*Id.*)

Furthermore, when Plaintiff completed his Function Report, he indicated that he performs yard work, walks, drives a vehicle alone, shop, pay bills, count change,

handle a savings account, and use a checkbook. (Tr. 428.) He also communicates with others on the phone or social media on a daily basis, tries to get along with everyone, and has never been fired from a job because of problems getting along with others. (Tr. 429, 431.)

Based on this evidence, the ALJ could properly find that Dr. Nichols's assessment of Plaintiff's limitations is inconsistent with the medical record of mostly normal psychological examinations and unsupported by medical evidence as well as Plaintiff's own testimony regarding his activities of daily living. As a result, the ALJ did not err in the weight given to Dr. Nichols's opinion.

### B. Whether the Appeals Council Erred in Failing to Adequately Consider the Submissions of New Evidence and Failed to Show a Reasonable Probability that the Outcome Would Not Change

A claimant may present new evidence at each stage of the administrative process, including to the Appeals Council. *See* 20 C.F.R. §§ 404.900(b), 416.1400(b). The Appeals Council has discretion to deny review of the ALJ's decision. *See* 20 C.F.R. §§ 404.967, 416.1467. The version of 20 C.F.R. § 404.970 that applies to this case states that the Appeals Council will consider additional evidence if Plaintiff had good cause for not informing the Commissioner about or submitting the evidence as described in 20 C.F.R. § 404.935 and there is "additional evidence that is new, material, and relates to the period on or before the date of the

hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a); *see also* 81 FR 90987 (explaining the new rules are effective January 17, 2017).

Further, the Commissioner's internal policy provides guidance on the meaning of "material" and chronological relevance and what it means for the Appeals Council to determine there is not a reasonable probability that the additional evidence would change the outcome of the decision. Hearings, Appeals, and Litigation Law Manual (HALLEX), § I-3-3-6, 1993 WL 643129 (May 1, 2017). The HALLEX explains that additional evidence is "material" if it is "relevant, i.e., involves or is directly related to issues adjudicated by the ALJ." *Id.* It explains that additional evidence "relates to the period on or before the date of the hearing decision" (i.e., is chronologically relevant) "if the evidence is dated on or before the date of the hearing decision, or the evidence post-dates the hearing decision but is reasonably related to the time period adjudicated in the hearing decision." *Id.* The HALLEX also explains that the Appeals Council "will evaluate the entire record along with the additional evidence to determine whether there is a reasonable probability that the additional evidence will change the outcome of the decision." *Id.*

The ALJ issued her decision on June 30, 2020 (Tr. at 102.) Plaintiff subsequently submitted new pieces of evidence to the Appeals Council: (1) medical

records from Dekalb Neurology and Sleep Center dated April 22, 2020, to November 5, 2020; (2) medical records from Dekalb Regional Medical Center dated October 14, 2020; (3) a mental health source statement from Dr. Christine Jennings of Weiss Lake Psychological Services dated August 25, 2020; (4) a physical capacities evaluation form by Dr. Frances Koe of Wills Valley Family Medicine dated September 16, 2020; (5) a physical capacities form by Dr. Paul Gilireath of DeKalb Neurology and Sleep Center dated November 5, 2020; and (6) a hearing transcript. (Tr. 2, 61, 74-76, 77, 82, 109-25, 159-90.) The Appeals Council denied Plaintiff's request for review despite this newly submitted medical evidence, based on a determination that the new evidence did not show "a reasonable probability that it would change the outcome of the decision." (Tr. 1-2.)

Plaintiff challenges this determination, arguing that the Appeals Council committed legal error by erroneously refusing to adequately consider the evidence. (Doc. 10 at 26-28.) Plaintiff also cites *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987) for the proposition that the proper standard of review is whether there is a reasonable *possibility* that the new evidence would change the result, rather than a reasonable *probability* of a different outcome due to the new evidence. (*Id.* at 28.)

The new rules, which came into effect in 2017 and govern in this case, dictate that the Appeals Council will review a case when it "receives additional evidence…,

and there is a reasonable *probability* that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5), 416.1470(a)(5) (emphasis added); *see also Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process*, 81 Fed. Reg. 90,987-01 (Dec. 16. 2016). Plaintiff points to *Washington v. Soc. Sec. Admin.*, (doc. 10 at 27), as an example in which the court determined that the Appeals Council erred for failing to consider "new, material, and chronologically relevant evidence." 806 F.3d 1317, 1321-23 (11th Cir. 2015). In *Washington*, however, the Eleventh Circuit appears to use the terms "possibility" and "probability" interchangeably when articulating the standard, suggesting that the difference between the meaning of the two terms in this context is not so great to produce a different result. *See Washington v. Soc. Sec. Admin.*, 806 F.3d 1317, 1321-22 (11th Cir. 2015). Moreover, *Washington* was decided two years before the Social Security Administration revised the regulations and clarified that the proper consideration for the Appeals Council is whether there is a reasonable probability that the additional evidence would change the outcome of the decision.

    The additional evidence consists of three records. The Appeals Council determined that the chronologically relevant evidence did not show a reasonable probability that it would change the outcome of the decision. (Tr. 2.) Plaintiff offers

no analysis as to why the additional evidence would raise a reasonable probability of a different outcome, and the Court finds none in its examination of the record.

Plaintiff suggests that the Appeals Council was required to further discuss or evaluate the evidence. (Doc. 10 at 26-28.) The Appeals Council, however, is not required to make specific findings of fact or provide a detailed explanation of evidence when the claimant's request for review is denied. *See Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 852-53 (11th Cir. 2015). Plaintiff also emphasizes that the new evidence is from Plaintiff's treating physicians (doc. 10 at 28), but as noted in Section III.A above, the regulations that apply in this case do not give special weight to the opinions of certain physicians over others, instead considering all opinions in light of the factors set forth in 20 C.F.R. §§ 404.1520c, 416.920c.

Plaintiff also submitted supplemental authority citing *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1063 (11th Cir. 2021), which held that "the Appeals Council erred in refusing to consider Pupo's new, material, and chronologically relevant evidence." Here, however, the Appeals Counsel considered the new evidence Plaintiff submitted but ultimately found that it did not "show a reasonable probability that it would change the outcome of the decision." (Tr. 2.) As noted above, the Appeals Counsel is not required to provide a more detailed explanation.

21

*Parks*, 783 F.3d at 852-53. The Court, however, will now explain why it finds that the Appeals Counsel did not err in reaching its conclusion that the evidence did not raise a reasonable probability of a different outcome.

Among the evidence submitted by Plaintiff is a transcript of the hearing before the ALJ, which was already part of the record considered by the ALJ. (*See* Tr. 109-25, 128-58.) Accordingly, the Appeals Council did not err by finding that such evidence did not raise a reasonable probability of a different result.

The Plaintiff also submitted physical capacities forms by Dr. Gilreath and Dr. Koe. (Tr. 61, 77.) The doctors completed these forms by circling their answers or filling in brief answers. (*Id.*) Dr. Gilreath completed his form on November 5, 2020, and he indicated that Plaintiff could sit upright in a chair for less than fifteen minutes and stand for less than thirty minutes at a time. (Tr. 61.)  He also expected Plaintiff to be lying down, sleeping, or sitting with his legs propped up between six and eight hours out of an eight-hour workday, to be off-task 90% or more of the day, and to miss 20 or more days in a 30-day period. (*Id.*) Dr. Gilreath believed these limitations existed back to November 1, 2018, and expected them to continue for a year or more. (*Id.*) Finally, Dr. Gilreath attributed the limitations he described to cervical stenosis and lumbar stenosis radiculopathy, and he listed somnolence as a side effect of Plaintiff's medications. (*Id.*)

Dr. Koe completed his form on September 16, 2020, reaching some different conclusions. (Tr. 61, 77.) Dr. Koe found that plaintiff could sit in a chair for up to one hour and stand for less than thirty minutes at a time. (Tr. 77.) He expected Plaintiff to be lying down, sleeping, or witting with his legs propped up for two hours out of an eight-hour workday, to be off-task for 10% of the day, and to miss two or three days in a thirty-day period. (Tr. 77.) Dr. Koe agreed that Plaintiff's limitations existed back to November 1, 2018, but he qualified that assessment as being based on the patient's report since he had only been seeing Plaintiff since January 2020. (*Id.*) Dr. Koe expected Plaintiff's condition to persist for a year or more, citing rheumatoid arthritis, left should pain, and pain in the cervical spine as conditions causing Plaintiff's limitations and decrease in physical reaction time and decrease in cognitive thinking as side effects of his medication. (Tr. 77.)

Dr. Christine Jennings also provided a mental health source statement that was among the new evidence provided by Plaintiff to the Appeals Council. (Tr. 2, 82.) Dr. Jennings circled "yes" in response to each of the questions asking whether Plaintiff could understand, remember, or carryout short and simple instructions; could maintain attention, concentration, and/or pace for at least two hours; could perform activities within a schedule and be punctual; could sustain an ordinary routine without supervision; could adjust to routine and infrequent work changes;

could interact with supervisors and/or coworkers; and could maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (Tr. 82.) The mental health source statement also shows that Dr. Jennings believed that Plaintiff would be off-task 20% of an eight-hour workday and would miss no work in a 30-day period due to his psychological symptoms. (*Id.*) She indicated that she did not know if Plaintiff's limitations existed back to November 1, 2018, and she did not know any side effects related to Plaintiff's medications. (*Id.*)

The other evidence submitted by Plaintiff includes imaging reports from DeKalb Regional Medical Center ("DRMC") dated October 14, 2020, and treatment records from DeKalb Neurology and Sleep Center ("DNSC") from April 22, 2020, to November 5, 2020. (Tr. 2, 74-76, 159-90.)  The DRMC imaging records show reports from three imaging scans. (Tr. 74-76.) The first was performed on the cervical spine and shows cervical spine fusion from C5 through C7, with a note indicate that it appears stable; no fracture or acute osseous abnormality; degenerative disk space narrowing and marginal spurring at C3-4, which was consistent with osteoarthritis and degenerative disk changes. (Tr. 74.) However, the prevertebral soft tissues, spinous processes, and odontoid were normal, and the facet joints were appropriately aligned. (*Id.*). The next scan was performed on Plaintiff's lumbar spine, showing "degenerative disk and osteoarthritic changes throughout the

lumbar spine with marginal osteophytic spurring." (Tr. 75.) The imaging also revealed increased sclerosis of the facet joints, which was most pronounced at L3 through S1, but the spinous processes were grossly normal and vertebral body heights were satisfactorily maintained. (*Id.*) While the report describes "intervertebral disk space narrowing at all levels, most pronounced at L5-S1," it also indicates there was no acute fracture or bony abnormality. (*Id.*) The final scan was performed on Plaintiff's left hip. (Tr. 76.) The results show that Plaintiff's hip was "intact without fracture or acute osseous abnormality," although the results reflect "some osteoarthritic changes." (*Id.*)

Finally, the records from DNSC show that Plaintiff had several telephonic visits from April 2020 to November 2020 due to the Covid-19 pandemic, which means he often did not receive a physical exam. (*See* Tr. 162-64, 167-68, 171-72, 175-76.) The records list neuropathy, chronic neck pain, depressive disorder, anxiety, hyperlipidemia, hypertensive disorder, diabetes mellitus, and chronic obstructive lung disease as problems that Plaintiff experienced. (Tr. 160.) Notes from Plaintiff's initial visit on April 22, 2020, also show that plaintiff described onset of his neck and arm pain around 2016, which was characterized by sharp pain and achiness, along with tinging in his left arm. (Tr. 162.) While Plaintiff reported decreased trip loss, the record shows no numbness or aggravating factors but suggests that the daily

persistent pain might be alleviated by heat and rest. (Tr. 162.) Plaintiff rated his paint

at a 7 or 8 out of 10, but at his follow-up appointment on July 23, 2020, treatment

notes indicate that the "severity [was] mostly resolved with 7.5 mg tid given by pain

management." (*Id.*) Notes from a visit on October 22, 2020, show that Plaintiff neck

pain found no relief from therapy or medication. (*Id.*) On November 5, 2020, the

record shows that Plaintiff was assessed for pain in his back, legs, and left hip. (*Id.*)

Plaintiff's pain was characterized as "lumbar achy pain though more recently

associated with radiation down bilateral lower extremities," but the pain in his left

hip was "more of a focal sharp stabbing pain." The notes also indicate "[n]o foot

drop or other weakness" and no aggravating factors, though sometimes numbness

and tingling were associated with remaining seated for extended periods. (*Id.*)

Finally, the overall assessment showed 4/10 severity for the "lumbar pain and lower

extremity radicular features," and left hip pain that was "brief but severe" with a

rating of 9/10. (*Id.*)

The Court finds that these records do not create a reasonable probability of a

different result. As discussed above, the hearing transcript did not add any new

information. The physical capacities forms completed by Dr. Koe and Dr. Gilreath

were inconsistent with each other and unsupported by the evidence discussed in

Section III.A above. The mental health source statement completed by Dr. Jennings

did not indicate that Plaintiff had any more severe limitations than those set forth in the RFC determined by the ALJ. (Tr. 82, 96.) The records from DRMC showed largely normal findings in spite of some degenerative disk space narrowing and marginal spurring consistent with osteoarthritis. (Tr. 74-76.) Finally, the records from DNSC were often based on reports from Plaintiff due to the lack of physical examinations and reflect inconsistent reports about whether Plaintiff's pain was adequately managed by medication. (Tr. 162.)

Accordingly, the findings in the newly submitted records do not create a reasonable probability of a different result in the ALJ's decision when considered with the information that was already in the record before her. Additionally, Plaintiff failed to provide an explanation of how such evidence would change the ALJ's decision. Therefore, this claim is due to be denied.

## IV.    Motion to Remand Pursuant to Sentences 4 and 6

The Court will now address Plaintiff's separately filed motion to remand his case to the Commissioner. (Doc. 15.) Plaintiff's argument for remand pursuant to Sentence 4 of 42 U.S.C. §405(g) is based on the same arguments presented in his appeal of the Commissioner's decision: lack of substantial evidence to support the ALJ's decision to discount the opinion of his treating psychologist, Dr. Nichols, and the failure of the Appeals Counsel to consider new evidence. (Doc. 15 at 1.)

Plaintiff also moved the Court to remand the case pursuant to Sentence 6 of 42 U.S.C. §405(g) based on a subsequent fully favorable decision issued on December 18, 2021, with an onset date of March 6, 2021. (Doc. 15 at 1; Doc. 15-1.) After the ALJ issued her decision on June 30, 2020, denying Plaintiff's claim, Plaintiff requested review by the Appeals Council. (Tr. 1.) Plaintiff submitted additional evidence to the Appeals Council for consideration, as discussed above. (Tr. at 2, 61, 74-76, 77, 82, 109-25, 159-90.) On November 25, 2020, and January 7, 2021, the Appeals Council denied review because the reasons argued by Plaintiff "do not provide a basis for changing the Administrative Law Judge's decision." (Tr. 1, 54.) Plaintiff now submits additional evidence in the form of a subsequent fully favorable decision on his claim, which was approved by the Commissioner on December 18, 2021, and filed with this Court on February 9, 2022. (Doc. 15-1.)

"Section 405(g) [of the Social Security Act] permits a district court to remand an application for benefits to the Commissioner . . . by two methods, which are commonly denominated 'sentence four remands' and 'sentence six remands.'" *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). A sentence four remand is appropriate when "evidence properly presented to the Appeals Council has been considered by the Commissioner and is part of the administrative record." *Id.* at 1269. Remand to the Commissioner is proper under

sentence six when new and material evidence that was **not** incorporated into the administrative record for good cause comes to the attention of the district court. *Id.* at 1267; *see Milano v. Bowen*, 809 F.2d 763, 766-67 (11th Cir. 1987) (ordering sentence six remand based on evidence first properly submitted to the district court).

As noted above, Plaintiff requested remand pursuant to sentence four of §405(g) because he believed the ALJ's decision was not based on substantial evidence and because he argued that the Appeals Counsel erred in failing to consider the new evidence he presented. (Doc. 15 at 1.) For the same reasons articulated in Section *III.A*, the Court denies remand pursuant to Sentence 4 of 42 U.S.C. §405(g).

The Court turns now to Plaintiff's other basis for remand, a subsequent favorable decision. Remand is only appropriate under sentence six if this Court finds the claimant has proven that "(1) there is new, non-cumulative evidence; (2) the evidence is 'material' in that it is relevant and probative so that there is a reasonable probability that it would change the administrative results; and (3) there is good cause for failure to submit the evidence at the administrative level." *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988) (citing *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986)). There is no dispute among the parties as to the first two elements. The subsequent favorable decision is new evidence, and it was not

29

available at the time the ALJ rendered her opinion in Plaintiff's 2019 claim, so Plaintiff had good cause for failing to submit it then.

The question remains whether the subsequent decision is "material." The Commissioner argues that Eleventh Circuit precedent establishes that a subsequent favorable decision is not enough, on its own, to support sentence six remand. (Doc. 16 at 2-3.) Plaintiff cites *Blum v. Berryhill*, for the proposition that if the claim was remanded due to lack of substantial evidence, the subsequent favorable decision should be considered. No. 3:16-CV-2281, 2017 WL 2463170, at *12 (M.D. Pa. June 7, 2017) ("[E]xtra scrutiny of the record upon remand is warranted in a case where remand is required because the reviewing court determines that the earlier decision is not based on substantial evidence."). (Doc. 15 at 3.)

In contrast to *Blum*, however, this Court has found that substantial evidence supports the ALJ's decision that Plaintiff was not disabled as of November 1, 2018. The fact that another ALJ later found that Plaintiff was disabled as of March 6, 2021, is not evidence to the contrary. As the Eleventh Circuit stated in *Hunter v. Soc. Sec. Admin., Comm'r*, "A decision is not evidence any more than evidence is a decision." 808 F.3d 818, 822 (11th Cir. 2015). The court further explained, "In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach

opposing conclusions." *Id.* Plaintiff counters that "the evidence supporting a subsequent favorable decision may constitute new and material evidence under § 405(g)." *Lindsey v. Comm'r of Soc. Sec.*, 741 F. App'x 705, 709-712 (11th Cir. 2018).

In *Hunter*, however, the court determined that a subsequent favorable decision was not sufficient on its own to demonstrate materiality by creating a reasonable probability of a different result. As the Court explained,

> Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate. Because of that possibility, the mere existence of a later favorable decision by one ALJ does not undermine the validity of another ALJ's earlier unfavorable decision or the factfindings upon which it was premised.

*Hunter*, 808 F.3d at 822. Plaintiff does not offer any further explanation as to the evidence or the basis for the different outcome or how that information might relate to the period the ALJ considered in Plaintiff's 2019 claim. Furthermore, the subsequent decision offered by Plaintiff is dated over a year after the ALJ's June 30, 2020, decision that Plaintiff was not disabled. (*See* Doc. 15-1; Tr. 102.) In *Hunter*, the Eleventh Circuit declined remand when only one day separated the contrary disability determinations. *Id.* at 820, 822. For these reasons, the Court finds that Plaintiff has failed to meet his burden to show that the subsequent decision is

material, and therefore, remand is not appropriate. His motion (Doc. 15) is accordingly due to be denied.

## V.     Conclusion

Upon review of the administrative record, and considering Mr. Stone's arguments, this Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON JULY 25, 2022.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

206728